**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br>vs.<br><br>Jason Alistair Lowery,<br><br>                Defendant. | No.  CR-11-02077-01-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Jason Alistair Lowery's ("Defendant") Objection to Predisposition Memo and Motion to Dismiss (Doc. 62), the Government's Response (Doc. 64), and the parties' respective supplemental briefing that was filed after an evidentiary hearing was held before this Court (Docs. 67 & 68). For the following reasons, the Court denies Defendant's Motion.

**I.      BACKGROUND**

On January 14, 2013, Defendant Jason Lowery was sentenced to 87 months imprisonment and five years of supervised release after he pleaded guilty to Count 2: Possession with Intent to Distribute Marijuana, a Class B felony offense in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (Doc. 35). On September 30, 2015, this Court reduced Defendant's sentence to 71 months imprisonment, pursuant to 18 U.S.C. § 3582(c)(2). (Doc. 39). Defendant's term of imprisonment concluded on May 26, 2016, and he began his five-year term of supervised release the following day. (Doc. 60 at 4). For the most part, Defendant reported as directed and maintained employment. (*Id.* at 4–5).

On May 13, 2020, Defendant was directed to submit a drug test. (*Id.* at 5). The next day, Defendant reported to the probation office and submitted a urine sample which tested positive for fentanyl. (*Id.*). On May 20 and May 27, 2020, the probation office attempted to contact Defendant telephonically, but he failed to respond. (*Id.*). On May 28, 2020, a letter was sent to Defendant directing him to report to the probation officer on June 11, 2020. (*Id.*). On June 11, 2020, Defendant failed to report. (*Id.*).

On June 16, 2020, the Court authorized a petition for warrant, and a bench warrant was issued. (Doc. 55). For the next year and a half, Defendant failed to file any monthly reports or otherwise contact the Probation Office. During this time, Defendant was apparently living in Queen Creek, Arizona at the residence listed in the Probation Office's records. Despite this, the Probation Office did not make any attempts to contact Defendant outside of the initial phone calls and the letter in May 2020. Probation Officer Ashley Bixler testified at the hearing that after the warrant was issued, the United States Marshals were responsible for locating and arresting Defendant, not the Probation Office. However, the record fails to indicate any efforts that were made by the Marshals to locate Defendant either, at least until his arrest in December 2021. On May 26, 2021, nearly one year after the warrant was issued, Defendant's five-year term of supervised release was set to expire.

On December 30, 2021—eighteen months after it was issued—the bench warrant was executed, and Defendant was arrested. (Doc. 60 at 1). On January 3, 2022, Defendant appeared before U.S. Magistrate Judge Michelle H. Burns, who ordered that he be detained pending further proceedings. (Doc. 54). On January 24, 2022, Defendant admitted to a supervised release violation—namely, Allegation A, Mandatory Condition #3, a Grade C violation (illegal substance use).[1] (Doc. 58).

On February 9, 2022, the Probation Office filed its Disposition Report (Doc. 60),

---

[1] Mandatory Condition #3 states: "You must refrain from any unlawful use of a controlled substance. The use or possession of marijuana, even with a physician's certification, is not permitted. Unless suspended by the Court, you must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court." (Doc. 52 at 14).

recommending that this Court impose a five (5) month term of incarceration followed by a twenty-four (24) month term of supervised release. (Doc. 60 at 4, 6). In response, Defendant filed the present Objection and Motion to Dismiss (Doc. 62) and requested an evidentiary hearing pursuant to Federal Rule of Criminal Procedure 32.1(c). A hearing was held before this Court on March 4, 2022, and testimony was heard from Defendant, Defendant's ex-wife, and United States Probation Officer Ashley Bixler. (Doc. 65). The parties filed supplemental briefing (Docs. 67 & 68) following the hearing.

## II.     DISCUSSION

Defendant raises two issues on the present motion. First, Defendant argues that this Court lacks jurisdiction to revoke his already-expired term of supervised release, considering the Government's delay in adjudicating Defendant's violation. Second, Defendant argues that the proposed extension of his punishment violates the terms of his plea agreement. The Court will address each argument in turn.

*A. Jurisdiction Issue*

Defendant first argues that the Government has failed to establish this Court's jurisdiction to revoke his supervised release term. The Court's jurisdiction to revoke a supervised release term *after* its expiration is as follows:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release *for any period reasonably necessary* for the adjudication of matters arising before its expiration if, before its expiration, a warrant . . . has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added); *see also United States v. Magana-Colin*, 356 Fed. Appx. 837, 838 n.1 (9th Cir. 2009) ("Section 3583(i) limits the time in which a court may revoke supervised release *after* the term of supervised release has expired."). Here, it is undisputed that the violation occurred—and a warrant was issued—*prior* to expiration.[2]

---

[2] As noted above, the violation occurred when Defendant failed a drug test in May 2020. A warrant was issued on June 16, 2020, after Defendant failed to report. Defendant's five-year term of supervised release was set to expire a year later, on May 26, 2021.

(Doc. 50). Thus, the power of this Court to revoke Defendant's term of supervised release extends *beyond* the May 26, 2021 expiration date "for any period reasonably necessary" for the adjudication of Defendant's violation.

Defendant argues that the Government has provided no explanation as to why eighteen months—from the issuance of the warrant in June 2016 until Defendant's arrest in December 2021—was a "period reasonably necessary" to adjudicate Defendant's violation. (Doc. 62 at 2). Defendant argues that the Government's delay in adjudication was particularly unreasonable given that Defendant was "in plain sight" and "living a normal life" during the entire eighteen-month period. (*Id.* at 4–5).[3]

In response, the Government argues that Defendant's term of supervised release never expired in the first place because Defendant absconded, and that Defendant's jurisdictional argument is therefore without merit. (Doc. 64 at 4–5). This Court agrees. The Ninth Circuit has held that a term of supervised release is tolled when a defendant is in fugitive status. *United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992). For purposes of tolling, a defendant becomes a fugitive when he absconds from his supervised release.

---

[3] The Court agrees with Defendant that the Government has failed to provide *any* meaningful explanation for why it took *eighteen months* to adjudicate Defendant's violation. Outside of the Probation Office's three initial attempts to contact Defendant in May 2020, neither the Probation Office nor the United States Marshals made any other attempts to locate or otherwise contact Defendant.
    The Court recognizes the Probation Office's contention that locating Defendant for arrest was not its responsibility after the warrant was issued and that it was instead the Marshals' job to do so. However, Defendant was still under supervised release, and his subsequent failure to file *any* monthly reports with the Probation Office should have prompted at least some sort of action from the Probation Office. As for the Marshals, the Government has failed to place anything on the record to indicate that the Marshals made any other attempts to locate and arrest Defendant prior to their actual arrest of him in December 2021.
    The Government's eighteen-month delay in adjudicating Defendant's supervised release violation is even more inexplicable when one considers that Defendant was apparently at his home in Queen Creek the entire time. Although Probation Officer Bixler indicated that she had been to the house before, neither she nor any other probation officer or Marshal ever drove to the house to confirm Defendant's presence.

*United States v. Murguia-Oliveros*, 421 F.3d 951, 953–54 (9th Cir. 2005). "Fugitive tolling begins when the defendant absconds from supervision—making it impossible for the Probation Office to supervise his actions—and ends when federal authorities are capable of resuming supervision." *United States v. Juarez*, 601 F.3d 885, 886 (9th Cir. 2010) (citing *United States v. Delamora*, 451 F.3d 977, 978 (9th Cir. 2006)).

Here, Defendant failed the drug test on May 14, 2020. The Government attempted, unsuccessfully, to contact Defendant three times during the subsequent two weeks. One of these attempts involved a letter directing Defendant to report to the probation officer on June 11, 2020. Defendant not only failed to report on June 11, but he also failed to report or otherwise contact the probation office *in any capacity* from that point forward until his arrest. At the hearing, Defendant's only explanations were that he was unable to log in to the online reporting system and that he was unaware of the pending warrant for his arrest because it was filed under seal and because no one from the Probation Office had reached out to him. Defendant's decision to suddenly cease reporting was particularly glaring given his otherwise consistent compliance with monthly reporting requirements for the first four years of his supervised release.

Defendant's failure to report violated the explicit terms of his supervised release[4] and placed him in fugitive status. Therefore, fugitive tolling of Defendant's supervised release term began—at the latest—on June 11, 2020, and continued until Defendant's arrest on December 30, 2021, the date upon which the probation office was able to resume supervision. As a result of the tolling, Defendant's term of supervised release did *not* expire on May 26, 2021, and Defendant's argument—that the Court lacks jurisdiction, in this case,

---

[4] Defendant was placed on the Low Intensity Supervision Caseload ("LISC"). While LISC has minimal probation officer contact and is for individuals deemed to be a low risk to the community and to reoffend, it still required Defendant to report monthly in writing or via the internet. (Doc. 52 at 46). Defendant complied with the monthly reporting for the first four years of his supervised release, but failed to report at all after the May 2020 drug test. The letter that was sent to Defendant on May 28, 2020—ordering his appearance at the probation office on June 11, 2020—also reminded Defendant of the requirement that he submit a monthly supervision report to the probation office. (Doc. 52 at 44).

to revoke his supervised release after its expiration—is without merit.

### B. Plea Agreement Issue

Defendant also argues that the Probation Office's proposed twenty-nine-month extension of his punishment—five (5) months of incarceration followed by twenty-four (24) months of supervised release—violates the terms of his plea agreement. (Doc. 62 at 5–9). In making this argument, Defendant points to the "Maximum Penalties" section (Doc. 34 at 1) of the plea agreement. (Doc. 62 at 5–6). That section provides, in part, that Defendant's violation is punishable by "a term of supervised release of five years." (Doc. 34 at 1). The same section further provides that "the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction." (Doc. 34 at 2). Defendant asserts that nothing in the plea agreement "would lead a reasonable defendant to believe that instead of the stated five years of supervision, that he could be under supervision for 29 months beyond the five years." (Doc. 62 at 6). After noting that revocation is not a "new" offense, but rather a part of the original sentence, Defendant asserts that he cannot be subjected to additional supervision, even if his supervised release term is revoked. (*Id.* at 6–7).

In response, the Government argues that the plea agreement did not include *any* stipulation as to the length of any term of supervised release to be imposed. The Court agrees. The plea agreement contains no stipulation or promise relating to the length of Defendant's supervised release term. The only stipulation relating to the length of Defendant's punishment concerns imprisonment, not supervised release. (*See* Doc. 34 at 3 ("[T]he United States and the defendant stipulate that Defendant's sentence shall be a term of 87 months of imprisonment.")). As a result, the plea agreement is not breached by this Court's revocation of Defendant's supervised release term nor by its imposition of additional terms.

Moreover, the plea agreement contains a specific acknowledgment that "the terms and conditions of . . . supervised release are subject to modification at any time" and that if Defendant violates any conditions, his "supervised release may be revoked and upon

such revocation, *notwithstanding any other provision of this agreement*, [Defendant] may be required to serve a term of imprisonment or [his] sentence otherwise may be altered." (Doc. 34 at 7 (emphasis added)). Defendant himself acknowledges this provision in his briefing. (*See* Doc. 62 at 6 ("[T]he defendant confirms his understanding that upon revocation '[he] may be required to serve a term of imprisonment, or [his] sentence otherwise be altered.'")). Therefore, to the extent Defendant argues that he was not put on notice of the consequences of revocation, the Court is unpersuaded.

Finally, Defendant fails to consider that his term of supervised release was tolled from May 2020 until December 2021 due to his failure to report to the Probation Office. The Ninth Circuit has held that "[a] person on supervised release should not receive credit against his period of supervised release for time that, by virtue of his own wrongful act, he was not in fact observing the terms of his supervised release." *Murguia-Oliveros*, 421 F.3d at 954 (citation omitted). Thus, by virtue of tolling, Defendant's "term of supervised release had not expired at the time of his arrest or at the time of revocation." *Id.* at 955. Instead, Defendant had nearly a year remaining on his supervised release term at the time of his arrest. This Court finds that the imposition of an additional term of supervised release[5] does not necessarily violate Defendant's plea agreement and is within the sound discretion of this Court, particularly given Defendant's violation and subsequent absconding.

///

///

///

---

[5] The Court also notes that the Government does not itself recommend any specific additional term of supervised release. Rather, the Government "leaves that determination to the sound discretion of the Court" in its original Response. (Doc. 64 at 9). Then, in its supplemental brief following the evidentiary hearing, the Government recommends that this Court "sentence defendant to time-served, plus an additional approximately 11.5 months of supervision (344 days, from June 16, 2020 when the warrant issued through May 26, 2021 when his original 5-year SR term would have expired)." (Doc. 68 at 5). Therefore, by virtue of tolling, the Government's recommendation would not exceed the original five-year term anyway.

## III. CONCLUSION

In conclusion, the Court rejects both of Defendant's arguments. As to the first, Defendant's term of supervised release was fugitively tolled when Defendant absconded and failed to report to the Probation Office in any capacity until his arrest in December 2021. Thus, his term of supervised release extended *beyond* the original, May 2021 expiration date and this Court has jurisdiction to revoke and extend his supervised release term. As to Defendant's second argument, this Court finds that the plea agreement contains no stipulation or promise relating to the length of Defendant's supervised release term. Thus, the plea agreement will not be breached by any extension this Court applies to Defendant's punishment.

Accordingly,

**IT IS ORDERED** that Defendant's Objection to Predisposition Memo and Motion to Dismiss (Doc. 62) and Defendant's Final Motion to Dismiss Petition to Revoke (Doc. 67) are **denied**.

Dated this 16th day of March, 2022.

Honorable Steven P. Logan
United States District Judge